SEVERIN MONTRES, LTD.,
et al., Plaintiffs,

v.

YIDAH WATCH CO., et al., Defendants.

No. CV–97–6985 KMW(MANx).

United States District Court,
C.D. California.

Nov. 26, 1997.

Order Denying Reconsideration,
Dec. 29, 1997.

William C. Steffin, Arnold E. Sklar, Charles R. Balgenorth, Lyon & Lyon, Los Angeles, CA, for Severin Montres, Ltd.

Marshall A. Lerner, Marvin H. Kleinberg, Michael R. Diliberto, Bradford E. Mattes, Kleinberg & Lerner, Los Angeles, CA, for Yidah Watch Co.

## MEMORANDUM OF DECISION RE: PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

WARDLAW, District Judge.

This is an action for Copyright Infringement (17 U.S.C. § 101 *et seq.*), Federal Unfair Competition and Trade Dress/Product Configuration Infringement (the Lanham Act) (15 U.S.C. § 1125(a) *et seq.*), and violation of California Unfair Competition (Cal. Bus. and Prof.Code § 17200, *et seq.*). Plaintiffs and defendants are in the business of designing, manufacturing, marketing and selling wrist watches. The gist of the complaint is that defendants' "Series 5000" watch is substantially similar to plaintiffs' "Model 3600" watch and the sale and distribution of the Series 5000 watch is likely to cause confusion. The Court finds that plaintiffs have demonstrated a probability of success on the merits of their copyright claim and that they will be irreparably harmed if an injunction fails to issue. Accordingly, the Court GRANTS plaintiffs' request for preliminary injunctive relief on the basis of their copyright claim. It does not reach plaintiffs' remaining claims.

## I. BACKGROUND

Plaintiffs Severin Montres, A.G., and Severin Montres, Ltd. (collectively "Severin") are the exclusive licensees worldwide with respect to the design, manufacture, marketing and sale of watch products under the Gucci family of trademarks. Cmplt. ¶ 9. In early 1996, Severin introduced the Model 3600 watch. The defining feature of the Model 3600 is the frame which surrounds the rectangular face of the watch: it is designed to form the letter "G" as a thick, three-dimensional block letter. The design of the Model 3600 also incorporates a featureless face and metal bracelet and clasp. Cmplt. ¶ 10, Ex. A.

Defendants Yidah Watch Company, Jacques Edho International, Jacques Edho Paris, Jacques Edho Watch Company, and Yacov (Jacob) Yida (collectively "Jacques Edho") are manufacturers, distributors, marketers, and sellers of watch products. Cmplt. ¶ 14. Severin alleges that Jacques Edho is "selling and/or offering for sale ... watch products under the 'Series 5000' designation which infringe Severins' copyright rights, incorporate Severins' protected Gucci Model 3600 design elements and are intended to capitalize on Severins' goodwill in connection with that design." Cmplt. ¶ 15, Ex B. The Series 5000 watch also has a featureless face and metal bracelet and clasp. The rectangular face of the watch is also framed by a thick, three dimensional block letter, either a "J" or and "E" rather than a "G." *See* Exhibits A and B attached to Revised Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction. Defendants began shipment of the allegedly infringing watches following the filing of the complaint in this action on September 22, 1997.

At a hearing on November 17, 1997, the Court granted plaintiffs' motion for a preliminary injunction and denied defendants' motions to dismiss for failure to join an indispensable party and to strike portions of plaintiffs' complaint. The Court found that plaintiffs had demonstrated a probability of success on their Copyright claim along with a possibility of irreparable harm, for reasons explained at the hearing and further below.

## II. LEGAL STANDARD

The United States Supreme Court has repeatedly held that "the basis for injunctive relief in the federal courts has always been

irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

To obtain a preliminary injunction the moving party must show "either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Dr. Seuss Enterprises, L.P. v. Penguin Books,* 109 F.3d 1394, 1396 n. 1 (9th Cir.1997), citing *Big Country Foods, Inc. v. Board of Educ.,* 868 F.2d 1085, 1088 (9th Cir.1989). Moreover, "once a copyright holder has shown a likelihood of success on the merits based on access and substantial similarity, irreparable injury is presumed." *Metro–Goldwyn–Mayer, Inc. v. American Honda Motor Co.,* 900 F.Supp. 1287, 1301 (C.D.Cal.1995); 4 Melvin B. Nimmer, *Nimmer on Copyright* § 14.06[A] (Matthew Bender & Co.1997).

## A. Copyright Substantive Law Analysis—Likelihood of Success

Reduced to its essential terms, the elements of a claim of copyright infringement are: (1) ownership of the copyright by the plaintiff, and (2) copying by the defendant. *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir.1996). Copyright registration certificates obtained within five years of first publication of the underlying work are *prima facie* evidence of the validity of the copyright and the facts stated therein, including ownership. 17 U.S.C. § 410(c) Copying of the protected elements is established by showing that the defendant had access to the plaintiffs' work and that the two works are substantially similar. *Smith v. Jackson,* 84 F.3d 1213, 1218 (9th Cir.1996).

### 1. Ownership of the Copyright by Severin

Plaintiffs have submitted Certificate of Registration No. VA 804–758, effective July 2, 1997, for the copyright. The copyright registration application lists Mr. Severin Wunderman as the author of the watch and plaintiff Severin Montres AG as the owner, through assignment from the author, of the copyright. Pursuant to 17 U.S.C. § 410(c), the copyright registration certificate is *prima facie* evidence of the validity of the copyright and the facts stated therein. "A certificate of copyright registration shifts to the defendant the burden to prove the invalidity of the plaintiff's copyrights." *Entertainment Research Group. Inc. v. Genesis Creative Group. Inc.,* 122 F.3d, 1211, 1217 (9th Cir.1997). Although the *prima facie* presumption is rebuttable, defendants have offered no evidence that Mr. Wunderman was not the author of the work, or that he did not validly assign his copyright to Severin Montres AG.[1] Nor have Defendants offered any other evidence to rebut the presumption of validity of plaintiffs' copyright. Indeed, the evidence before the Court is to the contrary.

---

1. Defendants have devoted significant argument to the proposition that plaintiffs lack standing to bring this suit. As the owner of the copyright listed on the registration certificate, however, Severin Montres AG clearly has standing to bring this action. Nevertheless, defendants urge this Court to find that a trademark license agreement ("Agreement") between plaintiffs and non-party Gucci precludes plaintiffs' suit. Among other things, the Agreement grants plaintiffs the exclusive right to market and sell watches with the Gucci mark and gives Gucci ownership of all copyrights that plaintiffs might obtain. In addition, the Agreement restricts plaintiffs' ability to bring infringement actions. Although ultimately the Agreement, along with other evidence, may establish that Gucci is the true owner of the copyright, at this preliminary stage, it alone does not negate the presumption that Severin Montres AG is now the owner of record for purposes of standing. Indeed, on the state of the evidence presently before the Court, had Gucci brought the infringement action, it would be required to join Severin Montres AG because it is the proprietor of record in the Copyright Office. Further, it is far from clear that plaintiffs are in breach of the Agreement, or even if they were, that defendants, as potential infringers, would have standing to complain of that breach.

■ The Copyright Act identifies works that are the proper subject matter of copyright protection. 17 U.S.C. §§ 102–103. The Model 3600 watch falls within Section 102(a)(5), which provides for protection of "pictorial, graphic, and sculptural works." 17 U.S.C. § 102(a)(5). Section 101 defines "pictorial, graphic, and sculptural works" to include

> two-dimensional and three-dimensional works of fine, graphic, and applied art ... Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article ... shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. § 101. Plaintiffs concede, as they must, that a watch is a useful article with an intrinsic utilitarian function. Therefore, to be the proper subject matter of a copyright, the design of the watch must be separable from the utilitarian aspects of the watch. "[W]here design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences, conceptual separability exists." *National Theme Productions, Inc. v. Jerry B. Beck, Inc.*, 696 F.Supp. 1348, 1353 (S.D.Cal. 1988) *quoting Brandir Int'l, Inc. v. Cascade Pacific Lumber Co.*, 834 F.2d 1142, 1145 (2d. Cir.1987).

■ The Model 3600 watch contains elements that are separable from the utilitarian purpose of the watch. A watch may be designed and constructed in an infinite variety of ways. The basic elements of a wrist watch are: a case into which the timepiece is placed; a bezel securing it to the case and controlling the movement of the hands; a face on which the hands are displayed; a crystal protecting the face and hands; and a bracelet to fasten it around a wrist. Each of these elements may have distinctive features and may be designed in any number of ways. The rectangular frame of the Model 3600 which forms a three-dimensional letter "G"

and the bracelet and clasp arrangement are the features that combine to give the Model 3600 its unique appearance. The frame around the face which forms the letter "G" in particular makes the Model 3600 unique and represents artistic design separable from the utilitarian aspects of the watch.

Defendants argue that "the idea or concept of identifying the maker of the watch by placing the first letter of the watchmaker's name on the perimeter of the watch face is purely functional." Opposition, 8:8–10. Defendants offer no support for this assertion. The Court finds, based on the evidence presented, that Severins' decision to design the Model 3600 in such manner had artistic rather than functional purposes.

■ Also contrary to defendants' unsupported assertion, the design of the Model 3600 is sufficiently original to merit copyright protection. "Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least a minimal degree of creativity." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 344, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Defendants argue that the frame of the Model 3600 which forms the letter "G" is not original because it is merely "a standard block font available on any word processor." Opposition, 10:23. Not only do defendants fail to offer an example of such a font among the 42 exhibits they supplied to the Court, but they misconstrue the meaning of "original." "Originality in the copyright sense means only that the work owes it origin to the author, *i.e.*, is independently created and not copied from other works." 1 Nimmer § 2.01[A]. The Model 3600 is original because Severin Wunderman independently created the design of the entire watch. Defendants have not offered any evidence that plaintiffs copied the design of the watch, nor that the design is not creative. Therefore, the Court finds that the Model 3600 is original.

### 2. Copying by Jacques Edho

■ In addition to proving ownership, to prevail on a copyright claim, the plaintiff must show that the defendant copied the

work. Copying of the protected elements is established by showing that the defendant had access to the plaintiffs' work and that the two works are substantially similar. *Apple Computer v. Microsoft Corp.,* 35 F.3d 1435, 1442 (9th Cir.1994).

### a. Access

■ Access has been defined as the actual viewing by the defendant of the plaintiff's work, or the reasonable opportunity by the defendant to read, hear, or view the plaintiff's work. *Bradbury v. Columbia Broadcasting System, Inc.,* 287 F.2d 478 (9th Cir. 1961); *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157(9th Cir.1977). The recent cases that address copyright infringement note that copying may be inferred from access and substantial similarity, but tend to focus more heavily on the question of substantial similarity. *See e.g. Dr. Seuss Enterprises v. Penguin Books USA, Inc.,* 109 F.3d 1394, 1397 (9th Cir.1997); *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435 (9th Cir.1994).

Nevertheless, the record before this Court supports the inference that defendants had access to the Model 3600. Plaintiffs introduced the Model 3600 in early 1996. It has received significant attention within the watch industry, the press, and the public. Orloff Decl. ¶¶ 4–5. The watch was introduced at a major trade show in Switzerland. *Id.* In its September 1997 issue, *Glamour* magazine selected the Model 3600 as the "Best New Status Watch of 1997." *Id.* A strong inference may be drawn that defendants had the opportunity to view the plaintiffs' watch. Indeed, defendants do not dispute their access to the Model 3600.

### b. Substantial Similarity

■ Substantial similarity traditionally has been determined in this Circuit under a two-part test having "extrinsic" and "intrinsic" components. As originally articulated in *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1164 (9th Cir.1977), the extrinsic prong examines similarity of ideas based on external criteria; analytical dissection and expert testimony can be relied upon, if helpful. The intrinsic prong examines similarity of expression from the standpoint of the ordinary reasonable observer. "As it is has evolved, however, the extrinsic test now objectively considers whether there are substantial similarities in both ideas and expression, whereas the intrinsic test continues to measure expression subjectively." *Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1442 (9th Cir.1994).

### i. Extrinsic Test

Plaintiffs have met their burden for showing substantial similarity under the extrinsic test. It is apparent from the exhibits offered in support of and against this motion that the Jacques Edho Series 5000 watch is similar to the Severin Model 3500 from an extrinsic standpoint. Both watches reduce to expression the idea of framing the face of the watch with the first letter of the watch-maker's name to identify the maker. Defendants' Series 5000 watch directly copies this idea from the Model 3600.

The watches also are substantially similar in their manner of expression. The letter boldly surrounds the face of the watch, completely encompassing its frame. In the case of plaintiffs' watch, the letter is a "G" whereas the defendants use either a "J" or an "E." Upon close examination of the watches,[2] however, due to the shape and size of the letters, that they are not the same letter does not sufficiently distinguish the watches. The watches are of the same overall width and rectangular shape. Each watch also contains a featureless face in the background. Each has nearly identical metal bracelets. Most critically, both plaintiffs and defendants use thick, block lettering forming a three-dimensional letter. Finally, the materials used by both parties to form the letter appear to be substantially similar.

### ii. Intrinsic Test

The intrinsic test determines from the work considered "as a whole" whether an

---

**2.** At oral argument, plaintiffs' counsel provided the Court with an exemplar of each of the watches, previously marked for identification at the deposition of Yacov Yida as Exhibits 33 and 34.

"ordinary reasonable person" would perceive a substantial taking of protected expression. *Dr. Seuss,* 109 F.3d at 1398. Plaintiffs have satisfied this element as well. Defendants argue that, "[t]he differences between the watches are so substantial that it is frivolous for plaintiffs to argue that one who has seen Yidah's watch will believe it is the plaintiffs' watch." Opposition, 11:15–17. The relevant inquiry, however, is whether an ordinary person would perceive a substantial taking of protected expression, not whether a reasonable person might confuse the watches. Since the plaintiffs have already established a *prima facie* case that the watch is protectable expression through the Registration Certificate, the question before the Court becomes whether an ordinary person would believe that defendants appropriated that expression. It is clear that this is the case. Indeed, defendants' expression of the idea of using a letter to frame the face of the watch is nearly identical to plaintiffs' expression of that idea. Therefore, an ordinary reasonable person would likely perceive a substantial taking of protected expression.

### III. CONCLUSION

Based on the foregoing, the Court hereby GRANTS Plaintiffs' Motion for a preliminary injunction.[3]

## ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER GRANTING PRELIMINARY INJUNCTION

This is a motion by defendants Yidah Watch Co., Jacques Edho International, Jacques Edho Watch Company, and Yacov Yida (collectively "Yidah") for reconsideration of the Court's November 17, 1997, Order granting preliminary injunctive relief in favor of plaintiffs Severin Montres, Ltd. and Severin Montres, A.G. (collectively "Severin"). Pursuant to Local Rule 7.11 the Court has dispensed with oral argument as it deems it unnecessary and not otherwise required by the rules governing such motions. Based upon all briefs, exhibits, declarations, as well as all files and records in this case, the Court is prepared to rule on this Motion, and here-

by **DENIES** Yidah's motion for reconsideration.

Local Rule 7.16 sets forth the bases upon which this Court may reconsider a previous Order. It provides:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise or reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

Local Rule 7.16.

Yidah argues that the watch presented to the Court and Yidah by Severin as exhibits in their briefs and as an exemplar during the hearing is not the watch that Severin presented to the Copyright Office for Registration. Yidah asserts that on December 3, 1997, they received certified copies of photographs of the watch from the Copyright Office. Yidah argues that they never had access to or knowledge of these photos prior to the hearing. Motion, 1:7–9. If Yidah's assertions were accurate, they might be entitled to reconsideration of this Court's previous Order. The uncontradicted evidence shows, however, that Severin produced before the preliminary injunction hearing the same photos that Yidah claims are newly discovered evidence. Because Local Rule 7.16 requires the presentation of new evidence to the Court, Yidah's motion must be denied.

Along with their motion for reconsideration, Yidah provided the Court with certified copies of the three photographs of the watch that Severin presented to the Copyright Office. One of the three images clearly shows two curved, dark areas on the frame of the

---

**3.** The Court issued the order granting preliminary injunctive relief on November 17, 1997.

watch that do not appear in other pictures of the watch or on the exemplars presented to the Court. Yidah argues that this photograph is new evidence which reflects material changes in the design of the watch, rendering the Court's analysis in support of the preliminary injunction invalid.

All three photos that Severin submitted to the Copyright Office, however, were in possession of both the Court and Yidah before the hearing. Severin produced the photos as Exhibit D in connection with the Declaration of Leigh Ann Lindquist in Opposition to Yidah's motion to strike. Local Rule 7.16 requires that there be a "material difference in fact ... *that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision.*" Local 7.16 (emphasis added). In their Reply, Yidah does not address Severin's argument that the allegedly "new" evidence was actually in Yidah's possession. Yidah's failure to examine the exhibits provided to them does not justify reconsideration of this Court's order.

Moreover, Severin has presented evidence that the shapes that appear on the frame of the watch in the photo were the result of poor photography. Benoit Decl. ¶ 3. In addition, Severin has offered evidence that it has never even manufactured a watch with the shapes that appear in that photograph. Guerry Decl. ¶ 2. Finally, an examination of the other photographs submitted to the Copyright Office supports these assertions. Photograph 1, upon which Yidah's entire motion is based, is a direct view of the face and frame of the watch taken from overhead. That photograph clearly shows the disputed shapes. The third photograph of the watch also shows the face and frame of the watch, but is taken at an angle. That photograph does not reveal the disputed shapes. The Court finds that there is insufficient evidence to support a conclusion that the watch presented at the hearing was not the same watch that has been copyrighted.

Based on the foregoing, the Court hereby **DENIES** Yidah's motion for reconsideration.